UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DEANNA FOX,  )<br>   Plaintiff,  )<br> )<br>  v.  )<br> )<br>FRANK BISIGNANO, Commissioner  )<br>of the Social Security Administration,  )<br>   Defendant.  ) | CAUSE NO.: 1:24-CV-190-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1] filed by Plaintiff Deanna Fox on May 13, 2024, and a Brief in Support of Plaintiff's Complaint to Review Decision of the Commissioner of Social Security Administration [DE 18], filed on October 23, 2024. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On January 29, 2025, the Commissioner filed a response, and Plaintiff filed a reply on February 2, 2025.

**I.      Background**

On March 18, 2022, Plaintiff filed an application for benefits alleging that she became disabled on December 31, 2015, later amended to March 18, 2021. Her application was denied initially and upon reconsideration. On August 1, 2023, Administrative Law Judge ("ALJ") Meredith L. Jacques held a video hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On September 8, 2023, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.  The claimant has not engaged in substantial gainful activity since March 18, 2021, the amended alleged onset date.

1

2. The claimant has the following severe impairments: alcohol use disorder, bipolar disorder, anxiety disorder, depressive disorder, post-traumatic stress disorder (PTSD), alcohol induced pancreatitis and gastritis, acute liver failure, asthma and chronic pulmonary disorder (COPD).

3. Even with the substance use, the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. The claimant has the residual functional capacity to perform medium work subject to the following additional limitations: The claimant should avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants. She should avoid concentrated exposure to hazards, such as unprotected heights and moving mechanical parts. She is able to understand, remember, and carry out simple instructions. She cannot perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas. She is able to deal with frequent changes in a routine work setting. She is able to tolerate frequent interaction with co-workers, supervisors, and the public. She would be off task 20 percent of the workday, in addition to normal breaks and mealtimes.

5. The claimant is unable to perform any relevant past work.

6. The claimant is an individual closely approaching advance age.

7. The claimant has at least a high school education.

8. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above.

9. Considering the claimant's age, education, work experience, and residual functional capacity based on all the impairments, including the substance use disorder, there were no jobs that exist in significant numbers in the national economy that the claimant can perform.

10. If the claimant stopped substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore the claimant would have a severe impairment or combination of impairments.

11. If the claimant stopped substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments in 20 CFR Part 404, Subpart P, Appendix 1.

12. If the claimant stopped substance use, the claimant has the residual functional

>   capacity to perform medium work subject to the following additional limitations: The claimant should avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants. She should avoid concentrated exposure to hazards, such as unprotected heights and moving mechanical parts. She is able to understand, remember, and carry out simple instructions. She cannot perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas. She is able to deal with frequent changes in a routine work setting. She is able to tolerate frequent interaction with co-workers, supervisors, and the public.
>
> 13. The claimant is unable to perform any relevant past work.
>
> 14. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
>
> 15. If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 16. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use. Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the amended onset date through the date of this decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. [DE 16]. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.   Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by

3

substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ "will reverse an ALJ's decision only if it is the result of an error of law or if it is unsupported by substantial evidence." *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023). "A reversal and remand may be required, however, if the ALJ committed an error of law, or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). At a minimum, "[a]n ALJ must provide an adequate 'logical bridge' connecting the evidence and [the] conclusions, but an ALJ's opinion need not specifically address every single piece of evidence." *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023) (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).

### III. Analysis

Plaintiff argues that the ALJ's determination of Plaintiff's residual functional capacity (RFC) is not supported by substantial evidence. The Commissioner argues that the opinion is supported and should not be disturbed.

In particular, Plaintiff argues that the ALJ's determination that she would be able to work if she did not use alcohol is not supported by the record. Plaintiff argues that the ALJ did not cite to any medical evidence to support the conclusion that Plaintiff is able to concentrate when sober and that she cherry-picked records that supported her conclusion while ignoring medical records that showed Plaintiff's symptoms were not controlled when she was sober.

"Congress eliminated alcoholism or drug addiction as a basis for obtaining social security benefits" so "the inquiry for the ALJ is whether 'were the applicant not a substance abuser, she would still be disabled'" and "[t]he claimant bears the [] burden of proving that alcoholism or drug addiction is not a contributing factor." *Harlin v. Astrue*, 424 F. App'x 564, 567 (7th Cir. 2011) (quoting *Kangail v. Barnhart*, 454 F.3d 627, 628–29 (7th Cir. 2006) (citing 20 C.F.R. § 416.935;

other citations omitted). In this case, the ALJ determined that if Plaintiff stopped abusing substances, she would not be disabled. Plaintiff argues that the ALJ failed to adequately explain the basis for this determination. The ALJ cited to four specific records as evidence that Plaintiff's "mental status examinations were generally within normal limits as she was more in control of the alcohol abuse during these periods" of sporadic treatment for alcohol abuse. AR 37. Review of the records shows that one is a list of medication history that does not include any reference to Plaintiff's mental status (21F), two contain extensive treatment records for alcohol rehabilitation and depression (40F and 43F), and one is a 461-page series of office treatment records for a number of medical concerns, including alcohol abuse, bipolar disorder, and PTSD (35F). Plaintiff argues that these very records include reports from Plaintiff's treating providers that her bipolar disorder and PTSD were not controlled, her mental health symptoms were unstable, her anxiety was unmanaged, and she demonstrated poor attention span and disjointed concentration during visits when there is no indication that she was intoxicated.

The Commissioner argues that the ALJ adequately explained her conclusions and summarized treatment records without ignoring a line of evidence contrary to her conclusion, and supported her conclusion that Plaintiff's mental functioning improves while she is sober. However, as Plaintiff argues, the records that the ALJ cited to in order to demonstrate Plaintiff's improvement while sober still show significant limitations in her attention span and concentration, and the ALJ did not explain how some improvement was equivalent to the ability to work full time. *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) (as amended Aug. 20, 2014) ("Simply because one is characterized as 'stable' or 'improving' does not necessarily mean that she is capable of doing light work."). Given the hundreds of pages cited to without any specific reference to particular parts of the records and the level of limitation described in some of those records, the Court is unable to

5

ascertain what medical evidence the ALJ relied upon to show that Plaintiff would not be disabled when she is not abusing substances. Her analysis raises concerns that the ALJ substituted her own medical judgment for that of actual medical professionals and gave weight to only the more normal findings in the record rather than the significant reports of limitation demonstrated by Plaintiff even while undergoing treatment for substance abuse. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014), as amended on denial of reh'g (Oct. 24, 2014) ("ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves."); *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013) ("An ALJ cannot rely only on the evidence that supports her opinion."); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."); *Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"). The need to rely on expert medical opinion is particularly important in situations involving the interaction of mental health concerns and substance abuse, particularly cases like Plaintiff's since "bipolar disorder can precipitate substance abuse, for example as a means by which the sufferer tries to alleviate her symptoms." *Kangail*, 454 F.3d at 629 (citing peer-reviewed psychiatric journal articles).

Although Plaintiff bears the burden of showing that she suffers from limitations apart from her alcohol abuse, once that has been established "the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). In this case, the Court cannot determine what evidence the ALJ relied on to determine Plaintiff's RFC. Despite the record running more than 3000 pages, the state agency reviewers determined that they had insufficient evidence to evaluate Plaintiff's claim, and the ALJ

found their findings inconsistent with the record because they did not give "supportive comments for their conclusions" and they did not examine Plaintiff. AR 31-32. The ALJ also pointed out that there was additional evidence added at the hearing level, implying that new evidence was helpful in determining the RFC, but, as Plaintiff argues, the ALJ did not explain why that new evidence gave her enough more information to allow her to make a determination of Plaintiff's capacity that the agency reviewers could not. The ALJ did not cite to any of those thirteen pages in her analysis or refer to any of the findings therein. In addition, review of that new evidence does not reveal the type of medical source statement that obviously supports an RFC finding. It includes medical records from 2023, including chest x-ray results, reports of multiple hospital stays and continued depression, among other diagnoses and related treatments. The Court is unable to follow any logical bridge from the evidence cited by the ALJ to her conclusions about Plaintiff's ability to work.

The ALJ must "provide a 'logical bridge' between the evidence and his conclusions," but she has failed to do so in this case. *Tutwiler*, 87 F.4th at 857. The case must be remanded for a determination of Plaintiff's RFC that is supported by the evidence in the record of the limitations caused by Plaintiff's mental health and physical disorders when she is not abusing alcohol. On remand, the ALJ is reminded that if the medical opinions in the record are insufficient or there is an evidentiary deficit, she may obtain a consultative evaluation. *See, e.g., Charles v. Comm'r of Soc. Sec.*, No. 2:22-CV-370 JD, 2023 WL 6439525, at *4 (N.D. Ind. Oct. 3, 2023) ("A consultative examination may be ordered when 'the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the] claim.' That means a consultative examination may be appropriate where the evidence is ambiguous and therefore insufficient to support any decision, favorable or unfavorable.") (quoting 20 C.F.R. § 416.919a(b)).

## VI. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in the Brief in Support of Plaintiff's Complaint to Review Decision of the Commissioner of Social Security Administration [DE 18] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 30th day of July, 2025.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc: All counsel of record